Andrew M. Calamari
Sanjay Wadhwa
Gerald Gross
Paul G. Gizzi
Karen M. Lee
Attorneys for the Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0077 (Gizzi)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) **COMPLAINT** |
| v. | )<br>) **ECF CASE** |
| KAMAL ZUHDI ABDALLAH, a/k/a KAMAL SULLEMAN, | ) |
| Defendant, | ) |
| and | ) |
| ADMINISTRATIVE OUTSOURCE SERVICES, INC., ZEINA ABDALLAH, and SERIAGA INVESTMENTS, INC., | ) |
| Relief Defendants. | ) |

---

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against defendant Kamal Zuhdi Abdallah, a/k/a Kamal Sulleman ("Abdallah") ("Defendant"), and relief defendants Administrative Outsource Services, Inc. ("AOS"), Zeina Abdallah and

Seriaga Investments, Inc. ("Seriaga") (collectively, the "Relief Defendants"):

## SUMMARY OF ALLEGATIONS

1. Since August 2016, Abdallah, a recidivist securities law violator, has defrauded two elderly investors of at least $260,000 through the offer and sale of securities. While serving the supervised release portion of his criminal sentence in *United States v. Abdallah*, 09-cr-717 (E.D.N.Y.) ("*United States v. Abdallah*"), Abdallah used a fictitious name to hide his criminal past from one of his victims, and when soliciting investments, Abdallah lied to his victims regarding the nature and use of investment proceeds.

2. Abdallah's first investor ("Investor A") invested $250,000 with Abdallah by transferring (i) $50,000 to Seriaga, a company controlled by Abdallah's 21-year old daughter, Zeina Abdallah, and (ii) $200,000 to AOS, a company whose bank account is controlled by Abdallah. Rather than use the investor funds to invest in currency trading as he had promised, Abdallah, instead, made cash withdrawals and otherwise used the investor funds to pay for his and his family's personal expenses. For example, within days of receiving the $200,000 from Investor A, Abdallah withdrew $189,500, consisting of: a wire transfer of $175,000 to Zeina Abdallah's personal bank account; a $10,000 check to Zeina Abdallah; and a $4,500 withdrawal by Abdallah.

3. Abdallah's second investor ("Investor B") wrote a $10,000 check to Seriaga on August 19, 2016, and the day after this check was deposited, Abdallah caused $9,990 to be transferred to himself.

4. By this action, the Commission seeks as to Abdallah, among other things: (i) permanent injunctive relief, including a specific conduct-based injunction prohibiting Abdallah from soliciting transactions in any security; (ii) disgorgement of ill-gotten gains plus

prejudgment interest thereon; and (iii) civil monetary penalties. The Commission also seeks as to the Relief Defendants disgorgement of ill-gotten gains plus prejudgment interest thereon.

## **VIOLATIONS**

5. By virtue of the conduct alleged herein: (a) Defendant, directly or indirectly, singly or in concert, has engaged and is engaging in transactions, acts, practices and courses of business that constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and (b) Relief Defendants received ill-gotten gains under circumstances in which it is not just, equitable or conscionable for them to retain the illegal proceeds.

6. Unless the Defendant is permanently restrained and enjoined, he will again engage in the transactions, acts, practices, and courses of business set forth in this complaint and in transactions, acts, practices, and courses of business of similar type and object.

## **NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

7. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], seeking to permanently enjoin the Defendant from engaging in the transactions acts, practices, and courses of business alleged herein.

8. The Commission seeks a final judgment ordering a conduct-based injunction, permanently enjoining Defendant from violations of the securities laws provisions that Defendant violated as alleged in this complaint, ordering Defendant and Relief Defendants to disgorge their ill-gotten gains and to pay prejudgment interest thereon, and imposing civil money penalties against Defendant pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)],

3

and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the events constituting or giving rise to the alleged violations occurred in the Southern District of New York. For instance, investor funds were wired to financial accounts located in this District.

11. In connection with the conduct alleged in this complaint, the Defendant, directly or indirectly, has made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, or of the facilities of a national securities exchange.

## DEFENDANT

12. **Abdallah,** age 52, is a recidivist securities law violator. From March 2005 to November 2008, Abdallah served as CEO and President of Universal Property Development and Acquisition Corporation ("UPDV"), a publicly traded company. Between October 2008 and July 2009, Abdallah and a former registered representative participated in a fraudulent scheme to manipulate the price of UPDV stock. On August 7, 2009, Abdallah was arrested and charged with securities and wire fraud in *United States v. Abdallah*. After his conviction, on January 6, 2012, Abdallah was sentenced to 42 months in prison, followed by three years of supervised release, and ordered to pay criminal restitution of $224,072.18. On August 13, 2009, the

Commission filed an amended complaint in *SEC v. Seiden, et al.*, 09-cv-3116 (KAM) (E.D.N.Y.), adding Abdallah as a defendant and alleging violations of the anti-fraud provisions. On March 30, 2012, the court entered a final judgment on consent against Abdallah, which imposed an injunction prohibiting further violations of the anti-fraud provisions, a penny stock bar, an officer and director bar, and ordered disgorgement of approximately $195,000, deemed satisfied by the criminal restitution order. On January 25, 2017, Abdallah filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Texas. *In re Kamal Zuhdi Abdallah*, 17-50173 (Bankr. W.D. Tex.). In his bankruptcy petition, Abdallah did not disclose any income from his current fraud or any ownership interest in AOS or Seriaga. His petition also did not disclose the two fraud victims as his creditors.

## RELIEF DEFENDANTS

13.     **AOS**, a Florida corporation located in Wellington, Florida, was organized in 2007. According to AOS's bank account documents, AOS provides waste management and remediation services.

14.     **Seriaga** is a Texas corporation organized in 2014 and located in Abdallah and Zeina Abdallah's San Antonio residence. At all relevant times, Zeina Abdallah controlled Seriaga's bank account, and she was listed as Seriaga's Vice-President on Seriaga's bank account opening documents. Seriaga is not registered with the Commission or any State.

15.     **Zeina Abdallah**, age 21 and Abdallah's daughter, is a resident of San Antonio, Texas. She resides in Abdallah's home. In Abdallah's bankruptcy petition, Zeina Abdallah is listed as one of Abdallah's dependents. Abdallah's bankruptcy petition disclosed that Zeina Abdallah paid $5,000 for Abdallah's bankruptcy attorney.

## **THE DEFENDANT'S FRAUD**

A.   **Investor A**

16.   In 2016, while serving the supervised release portion of his criminal sentence in *United States v. Abdallah*, Abdallah met Investor A, a 74-year old woman who has limited investment experience. At all relevant times, Abdallah falsely represented himself to her as "Kamal Sulleman," using this fictitious name to hide his criminal past. Thereafter, he sold her $250,000 worth of securities. Abdallah asked that Investor A invest her money with him trading foreign currencies. Abdallah told investor A that Seriaga was his currency trading business and he had traded currencies since he was 16 years old. Abdallah also promised Investor A a guaranteed return of the principal amount of her investment and that they would split the trading profits.

17.   On August 15, 2016, Abdallah, posing as the fictitious Kamal Sulleman, accompanied Investor A to the San Antonio branch office of her broker-dealer ("Institution A") and talked to her brokerage account representative about liquidating mutual funds to finance a $50,000 investment. Abdallah introduced himself as Kamal Sulleman to the Institution A representative and provided a business card, which listed his name as Kamal Sulleman and identified his association with Seriaga. The term "FOREX" appeared prominently on the front and back of the business card, along with several symbols representing foreign currencies.

18.   After the meeting, Abdallah instructed Investor A to provide him with a cashier's check payable to Seriaga, a company controlled by Abdallah's daughter, Zeina Abdallah, representing Investor A's $50,000 investment.

19.   On August 19, 2016, Investor A gave Abdallah the $50,000 cashier's check payable to Seriaga.

6

20. By November 2016, Abdallah solicited Investor A to invest another $200,000 to trade currencies and promised her a high rate of return. Investor A then attempted to transfer $200,000 from her brokerage account to her checking account, but the transfer was delayed by Institution A.

21. On November 10, 2016, Abdallah, again posing as the fictitious Kamal Sulleman, accompanied Investor A to Institution A and talked with five Institution A staff members.

22. Abdallah identified himself to the Institution A staff as Kamal Sulleman and said that he was Investor A's "money manager." When the Institution A staff asked Abdallah about Seriaga, its lack of registration, its currency trading operation, and how it could generate returns sufficient to pay Investor A the 24% interest that he had promised, Abdallah acknowledged that his investment system promised to pay Investor A a return of 2% per month on her investment, but he refused to provide further details, claiming that such information was proprietary.

23. On December 1, 2016, Abdallah executed in favor of Investor A a one-page promissory note for $250,000, paying interest of $5,000 per month with a one-year term. The note does not describe Abdallah's purported investment system to trade foreign currencies, nor does it describe that Investor A would share in the profits from Abdallah's trading.

24. Prior to executing the note, Abdallah told Investor A that he understood that this promissory note did not accurately describe her investment, and that he did not want the document to accurately describe the investment because he was not licensed to accept investments.

25. On December 2, 2016, Investor A wrote a $200,000 check from her checking account to AOS. This check was deposited into AOS's bank account that same day.

26. Three days later, on December 5, 2016, Abdallah caused AOS to send a $175,000

wire to Zeina Abdallah's personal bank account at Institution B. Also on December 5, 2016, Abdallah wrote a $10,000 AOS check payable to Seriaga. On December 9, 2016, Abdallah withdrew $4,500 from the AOS account.

27. Investor A's $200,000 investment was not used to trade currencies or invest in any other investment system.

28. Investor A's earlier $50,000 investment was not used to trade currencies or invested in any other investment system. Rather, the funds were withdrawn, for example, to pay credit card bills and as cash withdrawals.

29. Between August 19, 2016 and December 5, 2016, a total of $75,035.79 was withdrawn, consisting of $27,961 in cash withdrawals, $16,234.79 in credit card payments, $15,000 paid to Zeina Abdallah, and $15,840 paid to Abdallah

30. One month later, when Abdallah filed for bankruptcy, he did not list as a debt the $250,000 from Investor A, nor did he list any debt obligation to her. In his bankruptcy petition, he listed only $100 in gross income for 2016 and denied any interest in any business-related property.

31. Since December 2016, Abdallah verbally solicited Investor A for another $200,000 investment with a promise that she would receive $10,000 per month and could receive a return of her principal with three days of notice.

32. Investor A asked that Abdallah return all of her investment monies, but he has not done so.

**B.    Investor B**

33. In September 2016, the month after receiving Investor A's first investment, Abdallah verbally solicited a $10,000 investment from Investor B, a 73-year old resident of San

Antonio, Texas. Abdallah said that he profitably traded foreign currencies. Abdallah asked to borrow $10,000 at 18 percent interest from Investor B.

34. Investor B understood that, if Abdallah profited from trading foreign currencies, then Investor B would receive a return of principal with interest.

35. On September 19, 2016, Investor B invested $10,000 with Abdallah, and that amount was deposited into Seriaga's bank account that day.

36. Also on September 19, 2016, Abdallah executed in favor of Investor B a one-page promissory note for $10,000, at 18 percent annual interest, with principal and interest due annually. The note does not describe Abdallah's purported plan to trade foreign currencies, nor does it describe that repayment was based on the profitability of Abdallah's trading.

37. The very next day, September 20, 2016, Abdallah caused $9,990 to be transferred to himself.

38. When Abdallah filed for bankruptcy, he did not list as a debt the $10,000 promissory note to Investor B, nor did he list any debt obligation to Investor B.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (Defendant)

39. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 of this complaint.

40. From around August 2016 through the present, Defendant, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in the offer or sale of securities, has: (a) employed, and is employing, devices, schemes and artifices to defraud; (b) obtained, and is obtaining, money or property by means of untrue statements of material fact, or has omitted, and is omitting, to state

9

material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and is engaging, in transactions, practices and courses of business which operate or would operate as a fraud or deceit upon the purchaser of securities.

41. By reason of foregoing, Defendant, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
(Defendant)

42. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 of this complaint.

43. From around August 2016 through the present, Defendant, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, has: (a) employed, and is employing, devices, schemes and artifices to defraud; (b) made, and is making, untrue statements of material fact, or has omitted, and is omitting, to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and is engaging, in acts, practices and courses of business which operate or would have operated as a fraud or deceit upon any person.

44. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### (Relief Defendants)

45. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 of this complaint.

46. Relief Defendants obtained substantial illicit profits as a result of the fraudulent conduct of Defendant.

47. Relief Defendants were the recipients of such ill-gotten gains under circumstances in which it is not just, equitable or conscionable for them to retain the illegal proceeds. Consequently, Relief Defendants have been named for the amount of such proceeds by which they have been unjustly enriched as a result of the fraudulent conduct described in this complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

A Final Judgment permanently restraining and enjoining Abdallah, his agents, servants, employees and attorneys and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### II.

A Final Judgment permanently restraining and enjoining Abdallah, his agents, servants, employees and attorneys and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder

[17 C.F.R. § 240.10b-5].

### III.

A Final Judgment permanently restraining and enjoining Abdallah from soliciting transactions in any security.

### IV.

A Final Judgment ordering Defendant and Relief Defendants to disgorge their ill-gotten gains, plus prejudgment interest, and such other and further amount as the Court may find appropriate.

### V.

A Final Judgment ordering Abdallah to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

VI.

Such other and further relief as this Court deems just and proper.

Dated: April 28, 2017
      New York, New York

                                         Andrew M. Calamari
                                         Sanjay Wadhwa
                                         Gerald Gross
                                         Paul G. Gizzi
                                         Karen M. Lee

                                         SECURITIES AND EXCHANGE
                                           COMMISSION
                                         New York Regional Office
                                         200 Vesey Street, Suite 400
                                         New York, New York 10281-1022
                                         (212) 336-1100
                                         Attorneys for the Plaintiff